OPINION
On June 30, 2000, the Stark County Grand Jury indicted appellant, Tiffany King, on one count of involuntary manslaughter in violation of R.C. 2903.04(A) and two counts of child endangering in violation of R.C.2919.22(A) and (B)(2). Said charges arose from the death of appellant's five week old son, Dezmond King.
Appellant's two remaining children, Darryl, age six, and DeJean, age two, were removed from her custody. Thereafter, a custody action was instituted in the Court of Common Pleas of Stark County, Ohio, Family Court Division, Case No. JU111284. Within this case, appellant stipulated to abuse and dependency, and acknowledged that her two year old son DeJean could not have caused Dezmond's death.
A jury trial on the criminal case commenced on October 16, 2000. Prior to trial, appellant filed a motion in limine to exclude any statements or admissions she may have made to caseworkers during her custody case. During trial, the trial court overruled the motion and permitted the testimony. The jury found appellant guilty of the involuntary manslaughter count as well as one of the child endangering counts [R.C.2919.22(A)]. The jury found appellant not guilty of the remaining child endangering count [R.C. 2919.22(B)(2)]. By judgment entry filed October 23, 2000, the trial court sentenced appellant to an aggregate term of six years in prison.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FEDERAL AND STATE CONSTITUTIONS AT BOTH THE JUVENILE COURT AND GENERAL TRIAL DIVISION PROCEEDINGS.
 A APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DURING HER TRIAL WHEN TRIAL COUNSEL FAILED TO SECURE THE USE OF AN EXPERT WITNESS TO AID THE DEFENSE AND FAILED TO MOVE TO SUPPRESS HER STATEMENTS TO CASEWORKERS.
 B APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE FAMILY COURT PROCEEDINGS WHEN COUNSEL PERMITTED APPELLANT TO ENTER INTO A STIPULATION AND CASEPLAN AGREEMENT.
 II APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN STATEMENTS MADE TO A STATE AGENT WERE USED AGAINST APPELLANT, EVEN THOUGH APPELLANT HAD ALREADY BEEN REPRESENTED BY COUNSEL.
 III THE JURY'S VERDICTS WERE INCONSISTENT WITH THE ARGUMENTS MADE IN COURT AND AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 IV THE TRIAL COURT ERRED IN PERMITTING A STATE'S WITNESS TO TESTIFY CONCERNING AN "EXPERIMENT" CONDUCTED BY THE WITNESS.
 I
Appellant claims her trial counsel was ineffective in failing to obtain an expert witness for the defense, failing to file a motion to suppress her statements to caseworkers and permitting her to stipulate to dependency and a case plan in the Family Court proceedings. We disagree.
The standard this case must be measured against is set out in State v.Bradley (1989), 42 Ohio St.3d 136, 142, cert. denied 110 S.Ct. 3258. Appellant must establish two criteria:
 1) [C]ounsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition.
2) [P]rejudice arises from counsel's performance.
Appellant must further establish ". . . but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington (1984), 466 U.S. 668, 696.
 Expert Testimony
Four experts testified for the state regarding the trauma to Dezmond and the amount of force that could have caused the trauma: Frank Gabrin, M.D. (T. at 277), Anne Stormorken, M.D. (T. at 344), Richard Steiner, M.D. (T. at 397-399) and Marvin Platt, M.D. (T. at 475-476, 480-482). All agreed Dezmond suffered massive trauma caused by excessive force that could not have been inflicted by a two year old.
Appellant's defense centered on her two year old, DeJean, causing the trauma. This court must accord deference to trial counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380, 388. The choice of attack by the defense will not be second guessed by this appellate court. The record does not demonstrate if in fact any expert was contacted by the defense and if any expert would have given a different opinion.
 Motion to Suppress
Rhonda Brink, intake social worker with the Stark County Department of Jobs and Family Services, was called in to investigate Dezmond's injuries. T. at 282. Ms. Brink testified she observed appellant's interview with police and saw the sergeant read appellant her Miranda rights. T. at 283-284. The statements attributable to appellant were that DeJean had caused Dezmond's injuries. T. at 285. Ms. Brink then asked appellant if anyone else was in the house that night and appellant stated "no, it was just her and the children." T. at 286. Ms. Brink conducted interviews at appellant's residence on the Monday after the incident prior to the police interviews and prior to Dezmond's death. T. at 282-283.
After the Stark County Department of Jobs and Family Services took custody of appellant's other children, Cynthia Moore, a social worker, talked to appellant about visitation and appellant told her they "have nothing on her." T. at 375. After Dezmond's death and during the pendency of the family court case, appellant stated "she did not kill her baby." T. at 381.
All of these statements are consistent with the defense presented at trial. T. at 237. We fail to find any error in failing to file a motion to suppress when all of appellant's statements were consistent with her defense.
 Family Court Proceedings
In Family Court, appellant stipulated to the complaint which permitted her to enter into a case plan. Appellant now claims these admissions prohibited her from testifying at the criminal trial in her own defense. First, we do not know if this is the reason appellant did not testify. Secondly, as noted supra, all of appellant's statements were denials of having caused harm to Dezmond. Given the overwhelming testimony as to the cause and modus of Dezmond's death, we fail to find any deficiency on trial counsel's part or unfair prejudice to appellant. Further, there is no indication in the record that appellant had the same counsel for both proceedings.
Assignment of Error I is denied.
 II
Appellant claims statements made to caseworkers violated her constitutional right against self-incrimination because she was already represented by counsel when she was contacted by caseworkers. We disagree.
Appellant consistently denied she caused any harm to Dezmond, but did admit she was the only adult present at the time of the incident. Appellant admitted this to the investigating officers at the hospital and again after she had been Mirandized at the police station on the Monday following the incident and prior to Dezmond's death. T. at 286, 308. These statements did not violate appellant's rights. The first statements were made before she was a suspect and the second statements were made after she had been read her rights and before Dezmond's death and any action by the Stark County Department of Jobs and Family Services. The fact that appellant made the same statements twice was hardly prejudicial and in fact points out that she was consistent in her own defense.
Assignment of Error II is denied.
 III
Appellant claims her conviction was inconsistent with the arguments made and against the manifest weight of the evidence. We disagree.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
Appellant was convicted of one count of involuntary manslaughter with a felony specification in violation of R.C. 2903.04(A) and one count of child endangering with a serious physical harm specification in violation of R.C. 2919.22(A):
 R.C. 2903.04(A): No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.
 R.C. 2919.22(A): No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.
The jury did not convict appellant of the child endangering count in violation of R.C. 2919.22(B)(2) which provides that no person shall "[t]orture or cruelly abuse the child."
Appellant argues these verdicts are inconsistent with the state's theory of the case that she caused the harm to Dezmond. In support of this argument, appellant cites the case of State v. Miley, (1996)114 Ohio App.3d 738. In Miley, the Fourth District Court of Appeals reversed a conviction of felony child endangering wherein a father was found guilty on the sole evidence of not protecting his child from the actions of another. We find this case not to be persuasive. In Miley,
there was some evidence that another adult was present at the time the child was injured. In the case sub judice, there is no evidence that anyone else was present at the time of Dezmond's injuries other than appellant and DeJean. The jury could very easily conclude from the evidence presented that appellant's lack of supervision of DeJean was the cause of Dezmond's death. It was appellant's argument that she did not harm Dezmond and a fortiori it lead the jury to believe DeJean caused Dezmond's injuries while he was under her supervision. T. at 553-554.
From the evidence presented, including appellant's denials of having caused Dezmond's injuries, the jury could have chosen to disbelieve the experts' opinions that a child could not have caused the trauma. It appears the jury basically accepted appellant's theory of the case. We do not find the verdicts to be inconsistent with the evidence presented.
Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in permitting an expert witness to testify concerning an experiment. We disagree.
The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
The expert in question, Richard Steiner, M.D., testified he personally reviewed the case and the medical records and concluded that Dezmond died from "abusive injuries * * * inflicted injuries, non accidental." T. at 396. From a review of the CT scans and the X-rays, Dr. Steiner opined Dezmond "sustained multiple blows to his head":
 On review of the CT scan, I was able to see that there were three, at least three, areas of soft tissue swelling of the scalp. And the area around his right eye, there was an area around his right eye that was swollen. An area to the left back of his head and to the area to the right back of his head. Those three areas were noncontiguous. In other words, they were distinct, different areas of swelling. So that tells me that he had to sustain at least three different blows to his head in order for that appearance on the CT scan to be present.
T. at 397-398.
Dr. Steiner explained the medical records stated a two year old sibling had inflicted the injuries. T. at 398. Because Dr. Steiner thought this was an "implausible type of explanation," he attempted to "assess DeJean's developmental capabilities as well as his strength." T. at 398, 404. Dr. Steiner examined DeJean, weighing him and taking his height, and determined he was of "average size, height and weight" for his age. T. at 403-405. Next, DeJean was given a doll weighted to Dezmond's weight. T. at 405-406. DeJean "was unable to pick the doll up above his waist * * * was able to keep it from falling * * * [b]ut he could not raise it or manipulate it to a height greater than his waist." T. at 406. From these observations, Dr. Steiner concluded DeJean was "incapable of inflicting these injuries upon Dezmond. Dezmond did not suffer these injuries as a result of violence toward him by DeJean." T. at 406-407.
Appellant argues Dr. Steiner's experiment did not meet the requirements of Evid.R. 702(C). We disagree said rule is applicable sub judice. Dr. Steiner examined DeJean and reviewed Dezmond's medical records. In the course of his testimony, Dr. Steiner opined as to the cause of death and the amount of force necessary to inflict such injuries:
 These were injuries that I see in the emergency department as a result of a fall from great height, at least two, more commonly three floors, three stories, or an unrestrained passenger in a motor vehicular accident.
T. at 399.
The examination of DeJean was not a re-enactment or reconstruction of the modus of death, but an evaluation of the relative strength of DeJean versus the weight of Dezmond. Therefore, it was not an experiment or scientific test but an opinion based upon Dr. Steiner's perceived facts (Evid.R. 703).
Given Dr. Steiner's personal knowledge of the children and his medical expertise, we conclude the trial court did not err in permitting Dr. Steiner to opine that DeJean could not have been the modus of Dezmond's injuries.
Assignment of Error IV is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
FARMER, J., EDWARDS, P.J. and HOFFMAN, J. concur.